25CA0039 Marriage of Gonzalez Morales 07-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0039
Garfield County District Court No. 21DR30071
Honorable Denise Lynch, Judge

---

In re the Marriage of

Juan Antonio Gonzalez Morales,

Appellee,

and

Abril Dubbe Meixueiro,

Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Sullivan and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 9, 2026

---

The Harris Law Firm PLLP, Richard A. Harris, Katherine O. Ellis, Kady L. Tran, Denver, Colorado, for Appellee

Anne Whalen Gill, L.L.C., Anne Whalen Gill, Castle Rock, Colorado, for Appellant

¶ 1     Abril Dubbe Meixueiro (mother) appeals the district court's order, following a hearing on remand, granting the petition by Juan Antonio Gonzalez Morales (father) to return the parties' child to Mexico.  We affirm.

## I.     Remand Order

¶ 2     This case is a sequel to *In re Marriage of Gonzalez Morales*, 2024 COA 2 (*Gonzalez Morales I*), in which the division held that the district court improperly dismissed father's petition under the provisions of the Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670 (Hague Abduction Convention), and its implementing statutes, 22 U.S.C. §§ 9001-9011.  *Gonzalez Morales I*, ¶ 35.

¶ 3     The *Gonzalez Morales I* division reversed and remanded the case for the district court to resolve father's wrongful removal action under the Hague Abduction Convention.  *Id.*

¶ 4     On remand, the district court found that mother had wrongfully removed the child from Mexico and ordered that the child be returned to Mexico.  Mother now appeals, claiming that the district court erred by failing to dismiss father's petition as moot and declining to defer to certain findings by the Mexican court.

1

Mother also challenges the district court's denial of her postjudgment motion under C.R.C.P. 59.  We address and reject her first two contentions.  Because the record is incomplete as to the third, we are unable to meaningfully review it and reject it as well.

## II.  Relevant Facts and Procedural History

¶ 5    The parties were married in Texas in 2014 and have one daughter who was born in 2015.  Shortly after the child's birth, the parties moved to Mexico and settled in the city of Chihuahua in the state of the same name.  In November 2020, the parties divorced. The Family Court of the Morelos Judicial District, Chihuahua, Mexico, issued a decree that memorialized the parties' agreement as to their daughter.  The decree awarded mother custody of the child and provided father with regular parenting time.  In early 2021, father went to mother's home in Chihuahua for his parenting time and discovered that mother and the child were missing.

¶ 6    After learning that the child was in Colorado, father sought and obtained, in Garfield County District Court, a warrant under section 14-13-311, C.R.S. 2025, and the Hague Abduction Convention to take immediate custody of the child and return her to Mexico.  After a year of trying to locate mother and the child, father

served mother with the district court pleadings and executed the warrant in October 2022.

¶ 7 The district court then held a hearing on father's request to return the child to Mexico pursuant to the Hague Abduction Convention. After father presented his case, mother moved for judgment in her favor. Specifically, mother argued that father had not proved that he possessed rights of custody sufficient to obtain relief under the Hague Abduction Convention. The court deferred ruling on the issue and directed mother to begin presenting her case opposing father's petition. However, after considering the parties' written briefs, the district court ruled in mother's favor and denied father's petition. At the time, mother had not yet finished the presentation of her case.

¶ 8 Father appealed and the *Gonzalez Morales I* division reversed, holding that, under the Mexican doctrine of *patria potestas*, father had sufficient rights of custody to maintain a wrongful removal action under the Hague Abduction Convention. *Gonzalez Morales I,* ¶ 35. Per the division's remand instructions, *see id.* at ¶ 37, in December 2024, the district court held further proceedings, which included the completion of mother's case opposing father's request

to return the child to Mexico and father's presentation of rebuttal evidence.

¶ 9    In a written order, the district court granted father's petition for the return of the child to Mexico.  The court found that father had demonstrated that, under the Hague Abduction Convention, mother had wrongfully removed the child from Mexico and that she had failed to prove any of the statutory defenses to her wrongful removal of the child.

### III.    The Hague Abduction Convention

¶ 10    The purpose of the Hague Abduction Convention is to promptly return children who are wrongfully removed from their place of habitual residence, unless one of the narrow exceptions to return applies.  *See* 22 U.S.C. § 9001(a)(4); *In re Marriage of Jeffers*, 992 P.2d 686, 690 (Colo. App. 1999).  "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20 (2010).  Thus, the Hague Abduction Convention should not be interpreted to permit a parent to select the country to adjudicate parental responsibilities by crossing a border.  *See id.* at 21; *see also March*

*v. Levine*, 249 F.3d 462, 472 (6th Cir. 2001) (the Convention was "specifically designed to discourage those who would remove or retain children in the hopes of seeking a 'home court advantage'").

¶ 11     Under the Convention, the removal of a child is wrongful if

> a. it is in breach of rights of custody attributed to a person, . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b. at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Abduction Convention art. 3.  If the petitioner establishes these elements, the court "shall order the return of the child forthwith," *id.* at art. 12, unless the responding party can establish one of the exceptions under Articles 12, 13, or 20.  22 U.S.C. § 9003(e)(2).

¶ 12     Mother attempted to establish the following exceptions in response to father's Hague Abduction petition (1) proving by clear and convincing evidence that there is a grave risk that the child's return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation; (2) proving by a

preponderance of the evidence that father was not actually exercising custody rights at the time of removal; and (3) proving by a preponderance of the evidence that the proceeding was commenced more than a year from the date of wrongful removal and the child is now settled in her new environment. *See id.*; Hague Abduction Convention arts. 12 and 13.

¶ 13 We review de novo the district court's interpretation of the Hague Abduction Convention and its implementing statute. *In re Parental Responsibilities Concerning T.L.B.*, 2012 COA 8, ¶ 18.

## IV. The Petition Was Not Moot

¶ 14 Mother first argues that the district court should have dismissed or denied father's petition because a subsequent order issued by the Mexican court system on February 28, 2023, rendered father's petition moot. We are not persuaded.

### A. Timeliness of Mother's Appeal as to Mootness

¶ 15 As an initial matter, we disagree with father's contention that mother failed to timely appeal the district court's ruling on mootness. Before the hearing on remand, mother raised the issue of mootness in a motion to dismiss father's petition, which the district court denied on November 19, 2024. Father argues that,

because mother's notice of appeal was not filed until January 8, 2025, which was more than forty-nine days after the court's November 19 order, *see* C.A.R. 4(a)(1), mother's appeal as to mootness was untimely.

¶ 16    We reject father's contention because our jurisdiction is limited to the review of final judgments and orders. *See L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 14; § 13-4-102(1), C.R.S. 2025; C.A.R. 1(a)(1). And it is well established that the denial of a motion to dismiss is not a final and immediately reviewable order. *Marks v. Gessler*, 2013 COA 115, ¶ 16; *see also Suthers v. CB Servs. Corp.*, 252 P.3d 7, 10 (Colo. App. 2010) ("[F]or purposes of appeal, an order is final and appealable when it 'finally disposes of the particular action and prevents further proceedings as effectually as would any formal judgment.'" (quoting *Levine v. Empire Sav. & Loan Ass'n*, 557 P.2d 386, 387 (Colo. 1976)).

¶ 17    Thus, the court's November 19 order denying mother's motion to dismiss, which did not end the proceeding, was not a final and appealable order. Accordingly, mother was not required to file a notice of appeal within forty-nine days of that order under C.A.R. 4(a)(1). Instead, she was required to and did file a notice of appeal

within forty-nine days of the district court's January 7 order, which fully and finally resolved father's Hague Abduction Convention petition. *See Suthers*, 252 P.3d at 10. Therefore, we review mother's contention of mootness.

### B.  Applicable Law

¶ 18    "A case is moot when the relief sought, if granted, would have no practical legal effect on the controversy," and "[g]enerally, courts will decline to consider the merits of a case that is moot." *Gresh v. Balink*, 148 P.3d 419, 421 (Colo. App. 2006); *see also In re Marriage of Tibbetts*, 2018 COA 117, ¶ 7 (recognizing that an appellate court will "not render an opinion when the issues presented have become moot because of subsequent events"). We review de novo the legal question of whether a case is moot. *Colo. Mining Ass'n v. Urbina*, 2013 COA 155, ¶ 23.

### C.  Discussion

¶ 19    In arguing that father's petition was moot, mother relies solely on a February 28, 2023, order issued by the Second Family Chamber of the State Superior Court of Justice in the Mexican state of Chihuahua. In that order, the Mexican court accepted as "founded" mother's assertion that, because the child had been living

abroad for a lengthy period, the child was adapted to her new environment, and therefore a change to the child's residence would not be in her best interests. The Mexican court further found that an "abrupt change" for the child "would be far from beneficial and might even be harmful, as we can assume that with the passage of time, the minor child has integrated into her new environment and activities and is attached to her mother who cares for her."

¶ 20 Therefore, the Mexican court revoked, as not in the child's best interests, a prior, temporary order that had modified custody in father's favor. The court then ordered mother to propose a schedule wherein the child would continue living in the United States, with father having regular visitation.

¶ 21 However, as recognized by the district court, a later June 15, 2023, order from a judge of the federal Second District Court in Chihuahua found that the reasoning expressed in the February 28, 2023, order was incorrect. In the June 15 order, the court found that mother had not presented any evidence that the child was integrated into her new environment, and, therefore, the reasoning and findings in the February 28 order were unsupported. The court also held that the February 28, 2023, order had failed to analyze

9

several other relevant issues and, consequently, nullified that order and stated that further proceedings would be required.

¶ 22     Although mother's opening brief acknowledges in passing that the February 28 order was nullified, her entire mootness claim is based on her assertion that the order nevertheless mooted father's petition because it awarded her sole custody of the child and prohibited the child's return to Mexico. Yet mother has made no attempt to explain how a nullified order could properly form the basis of a finding of mootness. Thus, we decline to further consider mother's contention that father's petition was moot based on the February 28 order, which was no longer valid at the time of the remand proceedings.[1] *Cf. Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 44 (declining to consider undeveloped and conclusory contentions of error made without supporting argument or authority).

---

[1] To the extent that mother briefly references a later January 11, 2024, Mexican court order (which appears to have altered virtual visitation between father and the child in Colorado due to conflicts with the child's extracurricular activities), mother has made no argument regarding that order in relation to her mootness claim. We therefore do not consider it.

## V. Deference to the Mexican Court Orders

¶ 23    For similar reasons, we are not persuaded by mother's assertion that, under principles of comity, the district court was required to defer to the invalidated February 28, 2023, order from the Chihuahua Second Family Chamber of the State Superior Court of Justice State Superior Court of Justice when considering the physical or psychological harm and well-settled defenses that mother asserted under the Hague Abduction Convention.  *See* Hague Abduction Convention arts. 12 and 13.

¶ 24    To start, as explained above, mother's reliance on that order is misplaced given that it was nullified and otherwise declared to be unsupported by any evidence by the later June 15, 2023, order.

¶ 25    Equally fatal to mother's argument, the Hague Abduction Convention unambiguously provides that the well-settled defense is applicable only where proceedings for the return of a wrongfully removed child were commenced more than a year from the date of the wrongful removal.  *See* Hague Abduction Convention art. 12. And here, mother does not challenge the district court's finding that father commenced the necessary proceedings within a year of mother's wrongful removal of the child from Mexico.  Thus,

11

regardless of any findings the Mexican court made as to the child's adjustment to living in Colorado, the well-settled defense does not apply under the plain terms of the Hague Abduction Convention.

¶ 26 Indeed, federal courts applying the Hague Abduction Convention have recognized that it is not appropriate to defer to foreign court orders under the principle of comity where it would result in a misapplication or misinterpretation of the provisions of the Hague Abduction Convention. *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010-14 (9th Cir. 2009); *Carrascosa v. McGuire*, 520 F.3d 249, 258-63 (3d Cir. 2008). Thus, we disagree with mother that the district court was obligated to defer to the findings from the February 28, 2023, order, even if that order had remained in effect.

¶ 27 Moreover, even assuming, arguendo, that the February 28 order was not nullified, any findings of psychological harm to the child in that order were based on mere assumptions made by the Mexican court as to the child's status. For instance, the court found that "*presumably*, [the] child has already integrated" into her new environment and it also "*assume*[d] that[,] with the passage of time, the minor child has integrated into her new environment."

12

(Emphases added.) Likewise, that order was based at least in part on the "potential risk to the child, without any harm actually occurring," and it speculated that a change in the child's environment "might . . . be harmful."

¶ 28 Mother has not explained how such speculative findings meet the clear and convincing evidence standard that applies to a physical or psychological harm defense under the Hague Abduction Convention or the preponderance of the evidence standard that applies to the well-settled defense. *See* 22 U.S.C. § 9003(e)(2); Hague Abduction Convention arts. 12 and 13(b). Nor has mother explained how the mere possibility of harm from a change in the child's environment clears the high bar of "grave risk" of harm to the child. Hague Abduction Convention art. 13(b); *see also Gil-Leyva v. Leslie*, 780 F. App'x 580, 589-90 (10th Cir. 2019) (recognizing that "'grave risk' means the 'potential harm to the child must be severe, and the level of risk and danger . . . very high.'" (quoting *West v. Dobrev*, 735 F.3d 921, 931 (10th Cir. 2013))); *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013) (same); *cf. Walsh v. Walsh*, 221 F.3d 204, 218 (1st Cir. 2000) (explaining that the harm must be greater than the harm that would typically be

13

expected from taking the child from one parent and placing them with the other parent).

¶ 29 Lastly, we decline to address mother's assertion, presented in a conclusory fashion without any meaningful discussion or legal analysis, that the district court erred by ignoring other evidence that the child was at risk of psychological harm if she was returned to Mexico. *See People in Interest of R.J.B.*, 2021 COA 4, ¶ 35. And where mother expands on such an argument for the first time in her reply brief, we also decline to address it. *See In re Marriage of Dean*, 2017 COA 51, ¶ 31.

VI. Mother's Postjudgment Motion Under C.R.C.P. 59

¶ 30 To the extent that mother also challenges the district court's April 3, 2025, order denying her February 18, 2025, postjudgment motion under C.R.C.P. 59, we decline to disturb the district court's ruling. As the appellant, it was mother's responsibility to designate the record and to ensure that all items designated were transmitted to the appellate court. *See In re Marriage of Tagen*, 62 P.3d 1092, 1096 (Colo. App. 2002). Yet mother's postjudgment motion does not appear anywhere in the record, leaving us in the dark as to the arguments that she presented in that motion. We are therefore

unable to meaningfully review her contentions. Where an appellant fails to include the necessary portions of the record, we must presume that the missing record supports the judgment. *See Dean*, ¶ 15; *cf. People v. Wells*, 776 P.2d 386, 390 (Colo. 1989) (reviewing court cannot conclude that the district court's judgment is erroneous when the record is insufficient).

## VII. Disposition

¶ 31    The order is affirmed.

JUDGE SULLIVAN and JUDGE MEIRINK concur.